**UNITED STATES of America ex rel.
Robert Ray RAGAZZINI,**

v.

**Joseph BRIERLEY, Superintendent, State
Correctional Institution, Pittsburgh,
Pennsylvania.**

Civ. A. No. 70–548.

United States District Court,
W. D. Pennsylvania.

Nov. 11, 1970.

Fred Speaker, Atty. Gen. of Pa., Harrisburg, Jess D. Costa, Dist. Atty., Washington, Pa., for defendant.

Morris, Safier & Teitelbaum, Pittsburgh, Pa., Bloom, Bloom, Rosenberg & Bloom, Washington, Pa., Zeman & Zeman, Washington, Pa., for plaintiff.

## OPINION

GOURLEY, Senior District Judge:

Upon receipt of the Petition for Writ of Habeas Corpus filed by the State prisoner, the Court called for and reviewed all relevant State Records. It was determined that state remedies had been exhausted by virtue of the presentation of the issues raised herein both at trial and upon direct appeal. Based upon a review of the State records, the

Court filed an Opinion and Order denying relief on the merits on June 3, 1970. Relator then filed a Motion for an Evidentiary Hearing on June 10, 1970, asserting that the State records failed to indicate material facts relevant to the issues raised. The Motion was granted, and it was directed that an Answer be filed. An evidentiary hearing was conducted on September 9, 1970, and oral argument was entertained upon counsels' proposed findings of fact and law on October 9, 1970.

The Court is persuaded by the evidence to reconsider its determination with respect to the issues surrounding the identification testimony introduced at relator's trial. State remedies are exhausted as to these issues. However, it must be concluded that the material facts were not adequately developed in the sentencing court. 28 U.S.C. § 2254(d) (3). Based upon the State records and the record developed here, the Court finds the material facts to be those set forth below.

Relator was convicted of statutory rape arising out of an incident occurring on the evening of June 14, 1967. The prosecutrix had been invited by a young man to go to "a party" with him. She was driven to a slag dump where some beer previously had been concealed. Contrary to her expectations, the subsequent arrivants at the party all were males. The group became rowdy. At or about 9:30 P.M., when darkness had fallen, the prosecutrix, theretofore a virgin, was prevailed upon by a number of individuals to submit to intercourse in the front seat of an automobile. She escaped this confrontation on foot, fleeing to a nearby highway where she stopped an automobile and related what had happened to her. Two Chartiers Township policemen arrived in a second vehicle and brought the prosecutrix to a hospital. In the police vehicle, the prosecutrix related what had befallen her and provided the two officers with the names of some seven persons who were understood by the officers to have been present at the party but not necessarily

to have assaulted her. One of these names was "Rags." On the basis of the names provided, the Pennsylvania State Police commenced an investigation.

On June 15, 16 and 19, 1967, the prosecutrix was called to the State Police Barracks to observe four different lineups. At the first two lineups, the prosecutrix was able to identify three of the individuals presented as having attended the party, but she was uncertain as to whether two of the persons so identified had assaulted her. Relator, a suspect, appeared only in the third lineup, conducted on June 16, 1967. The prosecutrix could not identify him at this time as being either an assailant or present at the party. Nevertheless, relator was arrested later on this same day.

On June 22, 1967, a preliminary hearing was held for eight defendants, including relator, seven of whom were charged with raping the prosecutrix on the night in question. At the commencement of the hearing, a large number of people were congregating in the hearing room. To ascertain whether all defendants were present, the Alderman directed that each defendant respond to the calling of his name. Relator did so in the presence of the prosecutrix, who attended the preliminary hearing but did not testify as a witness.

At the preliminary hearing, a record of which exists, two witnesses present at the June 14 party testified that they had observed four of the defendants, including relator, enter the automobile in question with the prosecutrix. On the basis of this and other testimony, the four defendants so identified were bound over to court.

Of the four defendants, one Peter Paris was tried first before a jury. The prosecutrix testified at this trial. Relator was subpoenaed as a witness but was not called to the stand. Counsel representing relator in his State criminal proceeding testified at the evidentiary hearing in this Court that, during the course of the Paris trial, the prosecutor called the relator by name and directed him to

stand up in the courtroom. The transcript of the Paris trial fails to 'substantiate the occurrence of the event although it does reveal that counsel for Paris directed another subpoenaed witness to stand in the courtroom.

Relator subsequently was tried before a jury along with two other defendants. At the point in the Commonwealth's direct examination of the prosecutrix where relator's counsel expected that the prosecutrix would be asked to identify relator, said counsel requested a hearing outside the presence of the jury as to the basis for the prosecutrix's expected in-court identification. In support of the request, counsel stated to the State trial judge that the failure of the prosecutrix to identify relator at a lineup rendered it important to determine in what manner she came to identify the relator. Upon the representation of the Commonwealth that it would introduce no evidence of the lineup confrontation, the State trial judge denied the request for an independent hearing.

Relator's counsel then sought through cross-examination of the prosecutrix to develop the manner by which she came to identify relator. Counsel first asked the prosecutrix whether she recalled the lineup confrontation with the relator. Counsel then inquired as to the circumstances surrounding the confrontation at the preliminary hearing. In both instances the questions drew objections from the Commonwealth which the State trial judge sustained on the ground that the questioning exceeded the scope of cross-examination and raised matters properly to be presented as an affirmative defense. No further cross-examination upon the pretrial confrontations between the prosecutrix and the relator was conducted.

Relator contends that the aforementioned rulings of the State trial judge effectively foreclosed him from developing before either the judge or the jury the circumstances surrounding each of the confrontations occurring between the incident of June 14, 1967 and the prosecutrix's in-court identification

which had a bearing upon her identification of the relator. Before considering the applicable law, it is well to note that, although counsel was not present at the lineup, relator did not seek to challenge that confrontation between the prosecutrix and the relator. The prosecutrix failed to identify relator at the lineup and this fact was favorable to the relator. Relator rather sought to challenge as unduly suggestive other confrontations subsequent to the lineup and prior to trial wherein the relator was exhibited before, and identified to, the prosecutrix as a defendant charged by the Commonwealth with the offense of raping the prosecutrix. Relator's counsel was present at these confrontations.

■ A pretrial identification confrontation may be so unnecessarily suggestive and conducive to irreparable mistaken identification that it denies an accused due process of law. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Not merely a lineup but any pretrial confrontation must be scrutinized for its fairness. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). That a pretrial confrontation is unintentionally unfair or even accidental in its occurrence does not render it immune from constitutional infirmity. Mason v. United States, 134 U.S.App.D.C. 280, 414 F.2d 1176, 1180 (1969); United States v. Terry, 422 F.2d 704 (D.C.Cir.1970).

The preliminary hearing is particularly fraught with the dangers of suggestibility, intentional or otherwise, for it is in this setting that an accused is frequently presented to the victim or witness as one whom the State suspects as being guilty of an offense and, as here, guilty of the very offense to which the victim has been subjected or which the witness has observed. See Mason v. United States, *supra*, and United States v. Terry, *supra*.

■ Where a proposed in-court identification is tainted by a prior constitutionally infirm pretrial confrontation, the proposed in-court identification

is inadmissible in evidence. United States v. Wade, *supra*, 388 U.S. at 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149. And, if the defendant makes a timely challenge to the prosecutor's proposed in-court identification, the court is bound to conduct a hearing outside the presence of the jury to determine whether a pretrial confrontation between the same eyewitness and the accused was constitutionally infirm and, if so, whether the in-court identification may still be admissible as having had an independent source. Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Clemons v. United States, 133 U.S.App. D.C. 27, 408 F.2d 1230, 1237 (1968). Defense counsel did make a timely challenge to the proposed in-court identification of relator by the prosecutrix in the instant case. That the prosecution did not intend to introduce evidence of any of the pretrial confrontations was of no moment. United States v. Wade, *supra*, 388 U.S. at 240, 87 S.Ct. 1926, 18 L.Ed. 2d 1149. The State trial judge erred in refusing to entertain defense counsel's request for a hearing outside the presence of the jury to determine the manner by which the prosecutrix came by her identification of the relator and whether, in the light of the same, her proposed in-court identification would be admissible.

Unfortunately, this error was further compounded when defense counsel was precluded from cross-examining the prosecutrix relative to her confrontations with the relator at the lineup, the preliminary hearing and the Paris trial. Defense counsel sought to attack the credibility of the prosecutrix's identification testimony by demonstrating both her inability to identify relator at the lineup and the subsequent suggestive influences of "show-ups" at the preliminary hearing and Paris trial.

■ The right of cross-examination secured by the Confrontation Clause of the Sixth Amendment is made applicable to the States by the Fourteenth Amendment. Roberts v. Russell, 392 U. S. 293, 294, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1967). Although the latitude to be afforded in cross-examination is within the sound discretion of the trial judge, the imposition of a restraint upon cross-examination may be so severe as effectively to deprive a defendant of the right altogether. United States v. Norman, 402 F.2d 73, 76 (9th Cir. 1968).

The particular importance of the right to cross-examine upon identification testimony was recognized by the Supreme Court in United States v. Wade, *supra*, where it stated 388 U.S. at 227, 87 S.Ct. at 1932:

"In sum, the principle of Powell v. Alabama [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158] and succeeding cases requires that we scrutinized *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself."

Again, at 231, 87 S.Ct. at 1934, the Court stated:

"In short, the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification."

While, here, relator's counsel was present at the preliminary hearing and the Paris trial and, thus, was possessed of knowledge of the character of those pretrial confrontations, he was nevertheless as effectively precluded from cross-examining the prosecutrix with regard to the impact of those confrontations upon her as if he had not been present.

■ Even where a judicial hearing conducted outside the presence of a jury reveals that a proposed in-court identification has a source independent of an illegal pretrial confrontation and, therefore, is properly admissible in evidence, it nevertheless is contemplated that defense counsel may, as a matter of trial

tactics, bring out the pretrial confrontation. Clemons v. United States, *supra*, 408 F.2d at p. 1237. In several cases where in-court identifications have been deemed admissible as free of the taint of prior illegal confrontations, defense counsels' opportunity to cross-examine extensively the eyewitnesses upon their prior pretrial confrontations has been deemed an important factor in preserving the trials from reversible error. See Commonwealth v. Wilson, 255 N.E.2d 744 (Mass.1970), and State v. Moore, 460 P.2d 866 (Oregon 1969).

In the instant case, the refusal of the State trial judge to conduct a hearing out of the presence of the jury with respect to the admissibility of the proposed in-court identification by the prosecutrix and his subsequent rulings precluding defense counsel from cross-examining the prosecutrix with regard to her pretrial confrontations with the relator effectively denied relator a fundamentally fair trial. Accordingly, the Writ of Habeas Corpus shall issue, unless relator is afforded a new trial within a reasonable period of time. Should the State determine to conduct a new trial, it will be incumbent upon the presiding judge to conduct a hearing out of the presence of the jury to determine whether the confrontations between the prosecutrix and the relator at the preliminary hearing and Paris trial were impermissibly suggestive and, if so, whether any proposed in-court identification can be said to have derived from a source independent of those confrontations. If the in-court identification is deemed admissible, defense counsel must be afforded the opportunity to cross-examine the prosecutrix upon any and all pretrial confrontations.

An appropriate order is entered.

## ORDER

Now, this 17th day of November 1970, it is hereby ordered that a Writ of Habeas Corpus shall issue in the event that relator is not afforded a new trial within in sixty days of the date of this Order, unless extended for just cause by this Court.